Attachment A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FILED

AUG 3 0 2021

U.S. DISTRICT COURT-WVND
WHEELING, WV 26003

Shanda Lovette Gilyard
_____

_____

*Your full name*

**FEDERAL CIVIL RIGHTS**
**COMPLAINT**
(***BIVENS* ACTION**)

v.

Civil Action No.: 5: 21-CV-152
*(To be assigned by the Clerk of Court)*

Tammy Slinka
L. Smith
P. Adams /acting Warden R. McCaffrey
Federal Bureau of Prisons

Bailey
Mazzone
Blalock

*Enter above the full name of defendant(s) in this action*

### I.     JURISDICTION

This is a civil action brought pursuant to **Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)**.  The Court has jurisdiction over this action pursuant to Title 28 U.S.C. §§ 1331 and 2201.

### II.     PARTIES

*In Item A below, place your full name, inmate number, place of detention, and complete mailing address in the space provided.*

    A.    Name of Plaintiff: Shanda Gilyard Inmate No.: 75783 - 083
        Address: Secure Female Facility - Hazelton P.O. Box 3000
        Bruceton Mills, WV 26525

*In Item B below, place the full name of each defendant, his or her official position, place of employment, and address in the space provided.*

**Attachment A**

B.    Name of Defendant: Tammy Slinka
      Position: K2 Counselor
      Place of Employment: Secure Female Facility - Hazelton
      Address: P.O. Box 3000, Bruceton Mills WV 26525
      1640 Sky View Drive, Bruceton Mills, WV 26525

      Was this Defendant acting under the authority or color of federal state
      law at the time these claims occurred?     ☑ Yes          ☐ No

      If your answer is "YES," briefly explain: Please see Attachment A3
      9 - 10


B.1   Name of Defendant: L. Smith
      Position: K bldg Unit Manager
      Place of Employment: Secure Female Facility - Hazelton
      Address: P.O. Box 450
      1640 Sky View Drive, Bruceton Mills, WV 26525

      Was this Defendant acting under the authority or color of federal state
      law at the time these claims occurred?     ☑ Yes          ☐ No

      If your answer is "YES," briefly explain: Please see attachment A3
      9 - 10


B.2   Name of Defendant: P. Adams
      Position: Warden
      Place of Employment: Secure Female Facility - Hazelton
      Address: P.O. Box 450
      1640 Sky View Drive, Bruceton Mills, WV 26525
      Was this Defendant acting under the authority or color of federal state
      law at the time these claims occurred?     ☑ Yes          ☐ No

**Attachment A**

If your answer is "YES," briefly explain: _Please see attachment A3 9-10_

B.3    Name of Defendant: _R. McCaffrey_
Position: _Acting Warden_
Place of Employment: _FCI/SFF Warden_
Address: _P.O. Box 450_
_1640 SKy View Drive, Bruceton Mills, WV 26525_

Was this Defendant acting under the authority or color of federal state
law at the time these claims occurred?    ☑ Yes        ☐ No

If your answer is "YES," briefly explain: _Due to P. Adams no longer a Warden here at Secure Female Facility-Hazelton Mr. McCaffrey is now acting warden. I am confused about whether or not to add him to this lawsuit, being he was not the Warden when these acts of misconduct happened._

B.4    Name of Defendant: _Federal Bureau of Prison._
Position: _Entity._
Place of Employment: _____
Address: _Washington D.C._

Was this Defendant acting under the authority or color of federal state
law at the time these claims occurred?    ☑ Yes        ☐ No

If your answer is "YES," briefly explain: _Please see attachment A2 A3 8-10_

(3)    The Plaintiff further invoke this court's supplemental juris-diction, pursuant to 28 U.S.C. 1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

## Jury Trial Demand

(4)    Plaintiff demand a trial by jury on each and everyone of their claims as pleaded herein.

## Venue

(5)    Venue is proper for the United States District for the

## Notice of Claim

(6)    Plaintiff Shanda Gilyard timely Notice of Claim concern personal injury with

## Parties

(7)    Plaintiff Shanda Gilyard at all times relevant herein were a federal inmate, housed at Hazelton USP Complex - Secure Female Facility

(8)    Defendant The Bureau of Prisons is and was at all times rele-vant herein a entity created and authorized under federal laws of the

United States. It is authorized by law to maintain federal prisons, which acts as its agent in the area of housing and securing federal inmates and for which it is ultimately responsible. Defendant The Bureau of Prisons assumes the risks incidental to the maintenance of prison facilities and the employment of Wardens, and Unit Teams; as said risk attaches to the housing and securing of federal inmates; in federal custody.

⑨    Defendants Tammy Lee Slinka, Counselor of K-2 Unit, Ms. Smith Unit Manager of K. Building, and Warden Adams Warden of Hazelton's Complex - Secure Female Facility are and were at all times relevant herein duly appointed and acting officers, servants, employee and agents of The defendant Federal Bureau of Prisons. and/or the Hazelton USP Complex a agency of defendant Federal Bureau of Prisons.

⑩    Defendant Warden Adams, were at all times relevant herein duly appointed and acting supervisory officers, servants, employees and agents of the Federal Bureau of Prisons and/or the Hazelton USP Complex Secure Female Facility; responsible for the training, retention, supervision, discipline and control of subordinate members of the Hazelton USP Complex Secure Female Facility - under their command. Defendants are and were at all times relevant herein acting under color of federal law and employees of defendant The Federal Bureau of Prison, were acting for, and on behalf of, and with the power and authority vested in them by The Federal Bureau of Prisons and Hazelton USP Complex and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants Warden Adam Tammy Lee Slinka, and Mrs. Smith are sued individually and in their official capacity.

**Attachment A**

B.5    Name of Defendant: _____
       Position: _____
       Place of Employment: _____
       Address: _____
       _____

       Was this Defendant acting under the authority or color of federal state
       law at the time these claims occurred?    □ Yes        □ No

       If your answer is "YES," briefly explain: _____
       _____
       _____
       _____
       _____

III.    PLACE OF PRESENT CONFINEMENT

Name of Prison/ Institution: _Secure Female Facility- Hazelton_

       A.    Is this where the events concerning your complaint took place?
             ☑ Yes      □ No

             If you answered "NO," where did the events occur?
             _____

       B.    Is there a prisoner grievance procedure in the institution
             where the events occurred?       ☑ Yes      □ No

       C.    Did you file a grievance concerning the facts relating to this complaint in the
             prisoner grievance procedure?
             ☑ Yes      □ No

       D.    If your answer is "NO," explain why not: _____
             _____
             _____
             _____

       E.    If your answer is "YES," identify the administrative grievance procedure
             number(s) in which the claims raised in this complaint were addressed

Attachment A

and state the result at level one, level two, and level three. **ATTACH
GRIEVANCES AND RESPONSES:**

LEVEL 1 # 053, #052, XI- 109, 108, 110, 112, 161, 244 please see exhibits for result

LEVEL 2 1016947-F2, 1016944-F2, 1021257-F1, 1059946-F1, 1019620-F1

LEVEL 3 Please See exhibits for the Regional Office Response.

## IV.    PREVIOUS LAWSUITS AND ADMINISTRATIVE REMEDIES

A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?        ☐ Yes        ☑ No

B.    If your answer is "YES", describe each lawsuit in the space below. If there is more than one lawsuit, describe additional lawsuits using the same format on  a separate piece of paper which you should attach and label: "IV PREVIOUS LAWSUITS"

1.    Parties to this previous lawsuit:

Plaintiff(s):_____

Defendant(s):_____

2.    Court: _____
     *(If federal court, name the district; if state court, name the county)*

3.    Case Number:_____

4.    Basic Claim Made/Issues Raised: _____

_____

_____

_____

5.    Name of Judge(s) to whom case was assigned:

_____

6.    Disposition: _____
     *(For example, was the case dismissed?  Appealed?  Pending?)*

7.    Approximate date of filing  lawsuit:_____

---

**Attachment A**

      8.     Approximate date of disposition. Attach Copies:_____

C.     Did you seek informal or formal relief from the appropriate administrative officials regarding the acts complained of in Part B?
        ☐ Yes      ☐ No

D.     If your answer is "YES," briefly describe how relief was sought and the result. If your answer is "NO," explain why administrative relief was not sought.

_____

_____

_____

_____

E.     Did you exhaust available administrative remedies?
        ☐ Yes      ☐ No

F.     If your answer is "YES,", briefly explain the steps taken and attach proof of exhaustion. If your answer is "NO," briefly explain why administrative remedies were not exhausted.

_____

_____

_____

_____

_____

G.     If you are requesting to proceed in this action *in forma pauperis* under 28 U.S.C. § 1915, list each civil action or appeal you filed in any court of the United States while you were incarcerated or detained in any facility that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. Describe each civil action or appeal. If there is more than one civil action or appeal, describe the additional civil actions or appeals using the same format on a separate sheet of paper which you should attach and label "G. PREVIOUSLY DISMISSED ACTIONS OR APPEALS"

      1.     Parties to previous lawsuit:

**Attachment A**

Plaintiff(s): _____

Defendant(s): _____

2.    Name and location of court and case number:

_____

_____

_____

3.    Grounds for dismissal:    □ frivolous    □ malicious
      □ failure to state a claim upon which relief may be granted

4.    Approximate date of filing lawsuit: _____

5.    Approximate date of disposition: _____

## V.    STATEMENT OF CLAIM

*State here, as **BRIEFLY** as possible, the facts of your case. Describe what each defendant did to violate your constitutional rights. **You must include allegations of specific wrongful conduct as to EACH and EVERY defendant in the complaint.** Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, you must number and set forth each claim in a separate paragraph. **UNRELATED CLAIMS MUST BE RAISED IN SEPARATE COMPLAINTS WITH ADDITIONAL FILING FEES. NO MORE THAN FIVE (5) TYPED OR TEN (10) NEATLY PRINTED PAGES MAY BE ATTACHED TO THIS COMPLAINT. (LR PL 3.4.4)***

CLAIM 1: <u>Deprivation of Right Under the United States Constitution and 42 U.S.C. 1983</u>

_____

_____

_____

Supporting Facts: <u>Please see attachment A 21 (124-125)</u>

**Attachment A**

Please see attachment A pgs 4 - 20

CLAIM 2: Deprivation of Right to Due Process guaranteed under One United States Constitution: Fourth and Fourteenth Amendment.

Supporting Facts: Please see attachment A 22 (126- 128) Please see attachment A pgs 4-20

CLAIM 3: Liability of Defendant One Federal Bureau of Prisons for Constitution violations of Equal Protection of One Law guaranteed under One United State Constitution.

Supporting Facts: Please see attachment A 22-23. (129- 132) Please see attachment A pgs 4-20

CLAIM 4: Violation of Right to Equal Protection of Law

Supporting Facts: Please see attachment A 23 (133- 135) Please see attachments A pgs 4-20

Attachment A

CLAIM 5: _Abuse of Process_

Supporting Facts: Please see attachment A 24 (136-138)
Please see attachment A pg 4-20

## VI.   INJURY

Describe **BRIEFLY and SPECIFICALLY** how you have been injured and the exact nature of your damages.

Please see Attachment A 25 (141)

## VII.   RELIEF

State **BRIEFLY and EXACTLY** what you want the Court to do for you. _Make no legal arguments. Cite no cases or statutes._

Please see Attachment A 25 (142-A-J) and Attachment A 26

<u>Statement of Facts</u>

(11)   On March 23, 2020, Plaintiff Shanda Gilyard, was housed in Hazelton USP Complex - Secure Female Facility; K-2 Unit Room 230

(12)   On March 25, 2020, roommate Robin George admitted; she told her friend Crystal Runin she wanted to have sex with Plaintiff; and think about it everyday.

(13)   Not wanting R. George to think they shared the same desires Plaintiff lessened; the conversations with R. George; in the room.

(14)   Plaintiff became uncomfortable in the presents of R. George due to her being a sex offender and trauma incurred from a previous sexual harassment at Fluvanna Correctional Center for Women; in which occurred with three other individuals. That were Plaintiff's roommates as well.

(15)   On April 1, 2020; Plaintiff was made aware of the false rumors R. George was spreading at work of her having had sex with Plaintiff on three different occasions.

(16)   Plaintiff reported this to Ofc. Smith, the officer emailed the Unit Counselor Mrs. Slinka and Unit Manager Ms. Smith, and had the Plaintiff write a statement of what was being said, by roommate R. George (Please see exhibit 2)

(17)   On April 2, 2020, Plaintiff was called to Counselor Slinka's office. Both Counselor Slinka and Unit Manager Smith were present.

(18)   At that time Plaintiff informed Counselor Slinka and Unit Manager

Smith of roommate R. George admittance of desires to have sex with Plaintiff and of the false rumors George spreaded of the two having had sex on three different occasions. To co-workers in the kitchen and provided a list of Kitchen workers, they could speak with to verify the complaint against R. George.

(19)    Plaintiff informed the pair of the trauma incurred from a previous sexual harassment and the mental regression had began to set in from that prior sexual harassment.

(20)    And the uncertainty of R. George actions; had plaintiff paranoid. Due to the situation progression and having experienced three prior sexual harassment from three other individuals, that too was Plaintiff's roommate.

(21)    Plaintiff informed both Counselor Slinka and Unit Manager Smith of the attempt to not give roommate false flags; by entertaining he desire In contrast reduced the conversation to a bare minimum. Not using the toilet in front of R. George nor changed clothing while in her presents and/or putting up a partician to block veiw of body.

(22)    These actions only exacerbated the situation. R. George went from admitting she had shared her desires of having sex with Plaintiff; with C. Runin to spreading false rumors of having had sex with Plainbff; on three different occasions.

(23)    On April 1, 2020, Counselor Slinka and Unit Manager Smith spoke with R. George. At this time R. George admitted her desires to have sex with me, but had never indicated her and Plainbff had sex. She was asked, by C. Runin and a few of the kitchen worker while at work;

did she want to have sex with Plaintiff? She responded; yes I think about it every day

(24) The people she had responded to; spreaded the rumor she was at work telling everyone her and the Plaintiff had sex three times.

(25) After speaking with both Plaintiff and roommate R. George; both Ms. Slinka and Ms. Smith elected to leave Plaintiff in the cell with R. George.

(26) Stating its only hearsay. And doesn't support a great enough risk for a cell change. Plaintiff would just have to deal with it.

(27) Ms. Slinka nor Ms. Smith never questioned R. George's co-workers that were listed. To weigh the facts of the situation against the potential harm it incurred and/or it could possibly incur.

(28) Plaintiff told Mrs. Slinka and Ms. Smith; roommate R. George's actions are the onset of sexual harassment. She spreaded the rumor out of rejection and to alienate Plaintiff.

(29) Plaintiff informed Counselor Slinka, R. George had stated Mrs. Slinka nor Ms. Smith aren't going to move you. No matter what we would remain in the room together."

(30) Mrs. Slinka shrugged her shoulders, stood-up and stated " I'm still not going to move you " and told me to return to the cell.

(31) On April 6, 2020, Plaintiff emailed Mental Health Specialist Dr. Smith, informed him of the nightares he had started having.

(32)    On April 6, 2020; Plaintiff submitted two BP-8½'s (K2# 052 and K2 #053) Requesting Administrative Remedy for Mrs. Slinka and Mrs. Smith refusal to investigate and quell the situation. The Bureau of Prisons failure to have a procedural policy that address issues of mental regression incurred from being celled with sex offenders. (Please see exhibits 1 and 2)

(33)    A policy that give Mental Health Specialist the authority to over ride the Unit Team. With inmates that suffer from traumas of molestation, sexual assault, and sexual harassment. When celling with a sex offender, in turn causing mental regression.

(34)    In suring said inmate will receive proper Mental Health Care to treat the mental regression incurred.

(35)    On April 7, 2020; Plaintiff informed Mrs. Bird (Nurse Practitioner) of the situation.

(36)    Mrs. Bird called the Lieutenant's office to report the situation and tried to have Plaintiff moved into another cell. In turn, the Lieutenant referred her to Counselor Slinka.

(37)    Counselor Slinka still refused to move Plaintiff

(38)    On April 9 2020; Counselor Slinka returned Administrative Remedy Request tracking # 052-053 ( Please see exhibit 1)

(39)    The responsive attached to the Administrative Remedy Request Stated (tracking # 053) by the Unit Manager " she did not move Plaintiff because everything was based on 'Hearsay' (Please see exhibit 4 )

⑳ Responsive stated on (tracking # 052) Administrative Request stated 'Unable to address at this level as we do not have authority to write policy' (please see exhibit)

㊶. Counselor Slinka and Unit Manager Ms. Smith have an an egregious history of retaliating against inmates who report their misconduct or failure to adhere to operational procedures.

㊷ On April 13, 2020; Plaintiff emailed mental health specialist Dr. Smith informed him of the second night tare.

㊸ On April 14, 2020; Plaintiff gave Dr. Smith (mental health specialist) a letter referencing inmates actions.

㊹ On April 14, 2020; Plaintiff submitted two Administrative Remedy Request BP.9's (tracking #'s 1014829-F1 with copy of 8 1/2 tracking # 052) attached and (tracking # 1014877- F1 with copy of 8 1/2 tracking # 053) and statements from Plaintiff and R. George. (Please see exhibit) To Counselor Slinka- (1 and 5)

㊺ Administrative Remedy Request BP.9 (tracking # 1014829-F1 stated "When subjecting a inmate to the possibility of predatory exploitatives, of sex offenders. It induces, mental anguish, PTSD mental regression and attempts of suicide. (Please see exhibit 9)

㊻ Counselor Slinka taunted Plaintiff, for submitting the BP.9's (tracking # 1014829-F1 ) She tried to have Plaintiff placed in the strip cell (suicide watch) Stating to mental health special ist Mr. Smith; Plaintiff was suicidal and informed her of attempt of suicide in BP.9 received earlier that day; by her.

Attachment A    (9)

(47)    On April 14, 2020; around 12:30pm. Two officers came to Plaintiff's assigned Cell K2-230. Escorted Plaintiff to the Lieutatant's office, where Plaintiff was locked in a cage (freedom of movement was controlled) Thirty-minutes later Dr. Smith came and spoke with the Plaintiff. Explained he had received a call from Counselor Slinka stating Plaintiff was suicidal.

(48)    At that time the Plaintiff, explained he's not suicidal. He not the suicidal type. He is more of the angry violent type. Has alway resorted to violence to quell a situation. Holding the anger in induced anxiety attacks, that started 2016.

(49)    Dr. Smith asked Plaintiff 'What is most disturbing about the situation between Plaintiff and roommate'

(50)    Plaintiff explained it was the uncertainty that haunted, Plaintiff's mind. The roommate never made an direct attempt to express her sexual desires. But she made an indirect attempt. When that didn't reap the rewards she was seeking. She alienated Plaintiff with false rumors. Knowing from Counselor Slinka's past action of resolving conflicts between roommates Plaintiff would not be moved and nothing would be done. Knowing that gave her power over Plaintiff.

(51)    Plainjiff informed Mr. Smith that the anxiety had return. Dr. Smith prescribed BusProne (10mg) twice a day and had Plaintiff return back to the unit.

(52)    Mrs. Slinka taunted Plaintiff stating continueously 'Nothing will change you aren't getting moved.' Whenever Plaintiff requested

Attachment A (10)

Administrative Remedy Request forms.

(53)    Before exiting the Lieutatant's office Dr. Smith informed Plaintiff he had forward the emails and statement wrote basing R. George's actions.

(54)    On April 15, 2020; Plaintiff was called to the Lieutatant office to speak with SIS Lt. Woody and Capt. Squire.

(55)    After Plaintiff explained the situation Capt. Squire state until an act is committed they could not do anything. If we felt there was a need to intercede we would move either your roommate or the both of you to the SHU (Special Housing Unit)

(56)    There hasn't been an act committed that calls for our involvement. Its all hearsay. If you would have never asked her she probably would have never told you. You had no business asking her. That was her business.

(57)    Plaintiff then asked Capt. Squire had a colleague told him They had ever heard someone stating they were gonna vandalize his car. Would he not investigate the matter and/or be leary of that person.

(58)    His response was evasive. He then stated; these women love to get rumors started and you feed right into it.

(59)    Plaintiff explained he never told R. George to sit there with her friend and discuss her wanting to have sex with him and never told her to circulate false rumors of them having sex.

Attachment A (11)

60    He had already had three prior sexual harassment and can see the pattern of sexual harassment in R. George actions. He intent was alienation.

61    So although, a lewd at had not been committed. Her actions could still be classified as sexual harassment.

62    R. George's act of circulating false rumors of her and the Plaintiff. Weighed heavily on the Plaintiff and inflicted mental morbidih

63    Lt. Woody stated I understand how you feel in that situation go to your Unit Team and talk to them in a calm and respect ful way, as you are with us. To see if they would move you.

64    Two hours later, Ms. Smith and Mrs. Slinka with another individual approached cell 230 k2, Plaintiff's assign cell. Informed Plaintiff to pack his belongings. He was being moved.

65    Once Gilyard, finished packing, Mrs. Smith escorted Gilyard through the Unit Team into K1 Unit.

66    Upon entering K1 Unit, Mrs. Smith stated "you are being moved because who ever you spoke with this morning. They decided to do a further investigation and wanted you moved to K1 Unit until the investigation was over."

67    Gilyard was assigned to cell 215K1. With inmate Shavonne Whitfield is listed as a sex offender.

Attachment A (12)

68)    One hour prior to Gilyard, moving into cell 215 K1, Erin Kimichick was reassigned cells. Kimichick was reassigned from cell 215 K1 to cell 205 K1.

69)    Kimichick was moved to place Gilyard, in one room with another sex offender. To psychological torture Gilyard

70)    April 17, 2020 @ 10:40 AM Gilyard spoke with Capt. Squire, in K1 as he did his security rounds. Inquiring on the status of the investigation. and why he had moved Gilyard to a different unit.

71)    He informed Gilyard, he never requested the move and there was no investigation being conducted. He had already let the Plaintiff Know his stand point. On April 15, 2020 when they had previously discussed the matter at hand.

72)    Capt. Squire inquired, of the person who had misinformed Plaintiff. Gilyard informed him, it was U.M. Mrs. Smith. Capt. Squire informed Gilyard he would speak with U.M Mrs. Smith to see why Plaintiff had been moved.

73)    April 22, 2020 between 1:25 and 1:40 PM Capt. Squire, stopped in front of Gilyard's assigned cell 215 K1. Plaintiff inquired if he had any information on the bases for Plaintiff being moved from a program unit.

74)    At that time Capt. Squire called Plaintiff prejudice and stated the only reason Gilyard complained about R. George wanting to have sex with Gilyard and spreading false rumors was because of R. George charges.

(75) " Plaintiff stated to Capt. Squire 'So my trauma from previous sexual harassment and having been retaliated against by the people I went to for help bares no weight and your co-worker stating it was you who requested That I be moved.

(76)  Capt. Squire stated 'All inmates think its retaliation when they have done something wrong'

(77)  The Plaintiff stated 'So by reporting it; I did something wrong?

(78)  Capt. Squire stated 'Yes, you blew it up. You are bias and prejudice. Because of that inmate's charges. You may not think you are but you are.'

(79)  On April 22, 2020 Plaintiff submitted two Administrative Remedy Request BP. 8½ to Counselor Ware (please see exhibit 10 and 16)

(80)  Tracking # K1-108 'Retaliation' Mrs. Slinka and Mrs. Smith removal of Plaintiff from a program unit for writing Administrative Remedy Request against both UM Mrs. Smith and Counselor Slinka, for forcing Gilyard to continue living in the room with R. George (please see exhibit 16)

(81)  Removing Plaintiff from the Program Unit impeded Plaintiff from earning good time conduct incentives.

(82)  Tracking # K1-109 'Taunting Mrs. Slinka and Mrs. Smith had Counselor Ware (K1 Counselor) place Plaintiff in the room with another sex offender S. Whitfield. To psychological torture Plaintiff (Please see exhibit 10)

Attachment A (14)

( Please see exhibit    )

(83)    On April 23, 2020 Counselor Ware returned both BP. 8½ Administrative Remedy Request. Tracking # KL 108-109 Her responsive to both read ` I, Counselor Ware assigned you to One cell you are currently in, Ohat is my Counselor duty! ( Please see exhibit 10/16)

Attachment A ⑮

(23)    On the same day Counselor Ware returned, submitted Administrative Remedy Request BP-9 tracking #s 1014877-F1 and 1014829-F1.  Requesting BP-9 tracking # 1014877-F1 re-submitting with continuation on 8 1/2 x 11 sheet of paper.

(24)    Resubmitted BP-9 tracking # 1014877-F1 later that day.

(25)    Administrative Remedy Request BP-9 tracking # 1014829-F1 responsive read 'You cannot submit a BP-9 based on general population.

(26)    On April 23, 2020 Plaintiff Submitted a Administrative Remedy Request BP-8 1/2 for being called prejudice and bias by Capt. Squire. (Please see exhibit 37)

(27)    On May 1, 2020 submitted two Administrative Remedy Request BP-9's to Counselor Ware responsives to BP 8 1/2 tracking # KI-108 'retaliation' and KI-109 'taunting'

(28)    On May 5, 2020, Plaintiff mailed Administrative Remedy Request BP-10 with BP-9 attached tracking # 1014829-F1 to Mid-Atlantic Regional Office via certified mail tracking # 9590-9402-4499-8278-062245

(29)    On May 8, 2020, The BP-9 and BP-10 tracking # 1014829-F1 was returned with a sticky attached reading postage needed'

(90)    On May 10, 2020, Plaintiff mailed two BP-10's with BP-9's attached (tracking # 1014829-F1 remailed)

(91)    On May 11, 2020, Counselor Slinka refused roommate S. Whitfield and Plaintiff dinner trays.

(92)    On May 12, 2020, Case Manager Mr. Toner submitted a incident report wrote against Plaintiff. Offense Code 297 (Exhibit 34)

(93)    On May 5, 2020, Plaintiff called mother to ask if she had called daughter 'Brittany to remind her to accept the video visit request' The Plaintiff's mother than proceded to call daughter on land line, as Plaintiff remained on the cell phone. 'Brittany answered the call. Plaintiff relayed message through the mother. Then told both mother and daughter ' I love you' Then ended the call. [Exhibit 34-35]

(94)    This had been done on many occasions. Never had Plaintiff received an incident report. Not until Plaintiff submitted the Administrative. Remedy Request against Counselor Slinka and UM Mrs. Smith. (Exhibit 35)

(95)    Plaintiff lost 27 good days and Plaintiff 71yr. old mother has become afraid to answer land line whenever Plaintiff was on her cell phone. (Exhibit 36)

(96)    On May 13, 2020; Counselor Ware advised Plaintiff it was the Administrative Officer of SFF-Hazelton, Mrs. Ford; who had ordered UM Mrs. Smith and Counsel Slinka to move Plaintiff to K1

(97)    Plaintiff emailed Mrs. Ford; inquired whether or not if she had ordered the pair (K2 Unit team) to move Plaintiff. Mrs. Ford's responsive indicated, she had no idea what Plaintiff was talking about. ( Please refer to exhibit 4B to read UM Mrs. Smith reason for moving Plaintiff

Attachment A (19)

(98)    On May 13, 2020; roommate S. Whitfield moved to cell K1-218 from K1 215 ☞ (Please refer to exhibit    )

(99)    On May 14, 2020; Plaintiff submitted a Administrative Remedy Request BP.9 tracking# 1021257-F1 (Please Exhibit 38)

(100)    On May 28, 2020 mailed BP.10's to Mid-Atlantic Regional Office 'taunting tracking# 1016947-F2 and Retaliation tracking# 1016944-F2' Please see exhibit 12 and 19

(101)    On June 11, 2020, Plaintiff received Administrative Remedy Request BP.9 (tracking# 1021257-F1) against Capt. Squire. From Counselor Ware; after having had to inquire of its status, The responsive date read May 21, 2020. Program policy allocate 20 days; time period, To appeal Administrative Remedy Request BP.9 (Please exhibit 38  )

(102)    On June 25, 2020; Plaintiff received from Mid-Atlantic Regional Office. Rejected the Administrative Remedy Request BP.10

(103)    Statement for reason of rejection read 'You did not provide a copy of your institution administrative remedy request (BP.9) form or a copy of the (BP.9) response from the Warden.

(104)    Plaintiff made several request to be placed back in K2 unit. The Unit Manager Mrs. Smith denied the Plaintiff request. 'Stating' the B1+AV-Unit isn't programming due to COVID-19 Pandemic lockdown. You're not miss any program credits earning'

Attachment A (18)

(105)   October of 2020 the BHAV-Unit (K2) became the workers unit. Only inmates living in K2 could go out to work. The jobs were paying over $200.00 per month. Due to the COVID-19 Pandemic lockdown.

(106)   Plaintiff emailed UM Mrs. Smith requesting to be moved back to K2, due to there never was an investigation. Which was the only reason why Plaintiff was in K1. Plaintiff explained to UM Mrs. Smith how imperative it was, that he be moved to K2 Unit. He needed to work to pay his FRP (federal restitution payment)

(107)   Unit Manager Mrs. Smith still refused to move; Plaintiff back to K2 Unit. Plaintiff could not pay his FRP the month of November.

(108)   On October 26, 2020; Plaintiff submitted an Administrative Remedy Request BP-8½ against UM Mrs. Smith for discriminatory practices, against African American and transgender inmates. (tracking # K1208) Please see exhibit 44)

(109)   On November 10, 2020; Plaintiff received submitted Administrative Remedy Request Responsive from Capt. Asher that read "this matter has been referred to the appropriate department for review. However due to the sensitive nature of your allegation, some aspects of the findings may not be disclosed." Please see exhibit 45)

(110)   On November 25, 2020; Plaintiff submitted an Administrative Remedy Request BP-9 form. Giving an list with my name and the names of other African American and transgender inmates Unit Manager Smith would not allow to return back to the BHAV-Unit after being moved for investigation purposes or going to the SHU. Also a list of White inmates who went to the SHU for 113 offense and were allowed to

come out of the SHU (Special Housing Unit) and go straight back into the BHAV-Unit. When policy states if you have a 113 offense on your institutional disiplinary history you can not be housed in the BHAV-Unit. Those inmates came out the SHU able to work and pay their FRP. (Please see exhibit 46)

(111)    On December 8, 2020; A response to submitted Administrative Remedy Request BP.9 (tracking # 1059946-F1) was submitted. By the Administrative Remedy Coordinator Mrs. Knuckles that read 'You cannot file a BP.9 for other inmates. You are not claiming any thing personal. Claims towards African American and transgender inmates in general' (Please see exhibit 47)

(112)    Plaintiff did not receive the BP.9 form (tracking #1059946-F1) Until December 28, 2020.

(113)    On June 29, 2020; Plaintiff submitted an Administrative Remedy Request BP.8½ (tracking # K1161) Against Administrative Remedy Coordinator Mrs. Knuckles for impedment of Due Process Right guaranted by the Fourteenth Amendment of the United States Constitution Ex.32

(114)    On July 1, 2020; Plaintiff received an response by Unit Manager Mrs. Smith for the submitted BP.8½ tracking # K1161. The response read 'Your admin. remedies are not being processed as you have already filed on the topic and received a response, you cannot file on the same topic repeatedly!

(115)    On July 23, 2020; Plaintiff submitted Administrative Remedy Request BP.9 (tracking #1043907-F1) Listing all the Administrative Remedy Request Mrs. Knuckle rejected and the reason for the rejection Exhibit 31

(116)    On August 31, 2020; Submitted BP·9 tracking # 1043907-F1 was rejected. Rejection reason 'untimely' Exhibit 30

(117)    On December 29, 2020; Plaintiff submitted another Administrative Remedy Request (tracking # K1244) against Mrs. Knuckle for impedment of the Fourteenth amendment right the Due Process Clause. Ms. Knuckle rejected submitted BP·9 (tracking # 1059946·F1) stating 'You are not claiming anything personal.) When the Plaintiff's name was among those discriminated against.

(118)    SFF-Hazelton's mailroom staff opens all of Plaintiff's legal mail. Plaintiff submitted Administrative Remedy Request against the mailroom staff. Please see exhibit 24 (tracking # 1019620-F1)

(119)    Plaintiff's legal mail is still being tampered with. Plaintiff's Administrative Remedy Request (tracking # 1014029-F1) was never mailed to the Mid-Atlantic Regional Director. When it was mailed out attached to the BP·10 on April 28, 2020

(120)    Every BP·9 mailed along with the BP·10 to the Mid-Atlantic Regional Office. Was removed from the envelope before being mailed. Then placed back in the envelope when it returned from the Mid-Atlantic Regional Office.

(121)    Every BP·10 has been rejected for the same reason. You did not provide a copy of your institution administrative remedy request (BP·9) form or a copy of the response from the Warden' (tracking # 1059946-R1, 1019620-R1, 1021257-R1, 1016944-R1, and 1016947-R1) Please see exhibits 13, 22, 24, 43, 50)

Attachment A                                                              (21)

(122)    On February 19, 2020; Plaintiff submitted an Administrativ Remedy Request BP. 9 against Administrative Remedy Coordinator Mrs. Knuckle. Have not received the BP. 9 response to the BP 8 1/2 (tracking # K1244)

(123)    The Administrative Remedy Request BP. 10 (tracking # 1016947 RI and 1016944-RI) were switched. Attached to the wrong BP. 8 1/2 form. Before being mailed to the Mid-Atlantic Regional Office.

First Claim
Deprivation of Rights Under the United States Constitution and 42 U.S.C. 1983

(124)    The Plaintiff incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth here in.

(125)    By their conduct and actions in retaliation, taunting, and psychological torture; violating right to equal protection of; violating rights to substantive due process of Plaintiff; failing to intercede on behalf of the Plaintiff and in failing to protect the plaintiff from the unjustified and unconstitutional treatment the Plaintiff received at the hands of other defendants, defendants Tammy L. Slinka and L. Smith acting under color of law and without lawful justification, intentionally, maliciously and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of Plaintiff's constitutional right as guaranteed under 42 U.S.C 1983 and the United States Constitution, including its Fourth and Fourteenth amendment.

Attachment A   (22)

Second Claim

(126)   The Plaintiff incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

(127)   By their conduct in failing to remedy the wrong committed by their subordinates and in failing to properly train, supervise, or discipline their subordinates, supervisory defendant Warden P. Adams caused damage and injury in violation of Plaintiff's rights guaranteed under 42 U.S.C 1983 and the United States Constitution including its Fourth and Fourteenth amendment.

(128)   As a result of the foregoing, Plaintiff were deprived of his right to freedom from oppression, experienced pain and suffering, psychological and emotional injury, and great humiliation.

Third Claim
Liability of Defendant the Federal Bureau of Prisons for Constitutional Violations

(129)   The Plaintiff incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

(130)   At all times material to this complaint defendant Federal Bureau of Prisons acting through its Prison Facilities and through the individual defendants, had de facto policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants. These policies practices, customs and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

Attachment A

(23)

(131)   At all times material to this complaint the defendant Federal Bureau of Prisons acting through its federal prison facilities, and through the individual defendants, had de facto policies, practices, customs and or usage of psychological torture and discriminatory practices particularly upon people of African-American ethnicity and transgenders, and failing to assure that proper procedures were implemented to assure equal protection and opportunities. Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

(132)   As a result of the foregoing, plaintiff were deprived of his right to freedom from oppression, experienced pain and suffering, psychological and emotional injury, and great humiliation.

Fourth Claim
Violation of right to Equal Protection of Law

(133)   The Plaintiff incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

(134)   By the actions described above, defendants violated Plaintiff's right to equal protection of Law. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the Plaintiff and violated his statutory and common law right as guaranteed by the laws and Constitution of the State of West Virginia.

(135)   As a result of the foregoing, Plaintiff was deprived of the right of freedom from oppression, experienced pain and suffering, psychological and emotional injury and great humiliation and was otherwise damaged and injured.

Attachment A ㉔

Fifth Claim
Abuse of Process

(136)    The Plaintiff incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

(137)    By the conduct and actions described above, defendants employed regularly issued process against Plaintiff S. Gilyard compelling the performance or forbearance of prescribed acts. The purpose of activating the process was intent to harm Plaintiff without justification, and the defendants were seeking a collateral advantage or corresponding detriment to Plaintiff which was outside the legitimate ends of the process. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitutions of the State of West Virginia.

(138)    As a result of the foregoing, Plaintiff was deprived of his liberty, experienced pain and suffering, psychological and emotional injury and great humiliation and was otherwise damage and injured.

Attachment A
Sixth Claim
Intentional and Negligent Infliction of Emotional Distress

(139)    The Plaintiff incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

(140)    By the actions described above, defendants engaged in extreme and outrageous conduct, conduct utterly intolerable in a civilized community, which intentionally and/or negligently

Attachment A  (25)

Caused severe emotional distress to Plaintiff. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of West Virginia.

(141)    As a result of the foregoing, Plaintiff was deprived of his liberty, experienced pain and suffering, psychological and emotional injury and great humiliation and was otherwise damage and injured.

(142)    Wherefore, the Plaintiff demand the following relief and severally against all of the defendants.

a. Mental Health Specialist will have complete authority to re-assign cells and/or bed assignment of inmates with history of truamas from sexual assault, molestation, and sexual harassment. When being celled and/or bunked with inmates with crimes of sexual assault, and molestation and begin to experience mental and emotional regression; from past truamas

b. Mental Health Specialist will be required to have that inmate under their care for a minimum of 90 days. The inmate will receive one on one therapy for a minimum of twice a month for 90 days. After the 90 days of therapy. Mental Health Specialist will be required to do an assessment to determine if the inmate can be released from their care. Or require further clinical treatment.

c. Mental Health Specialist will have complete authority to re-assign cells and/or bed assignment of transgender inmates. Being celled and/or bunked with inmates with crimes of sexual assault and molestation, if the Specialist determine the transgender need to be re-assigned.

Attachment A  (26)

d. Mental Health Specialist will be required to adhere to the patient and doctor confidentiality laws. Unless the inmate disclose anything that violates the Law.

e. Inmates will have the right to a mediation. with the staff, who discriminated against said inmate. With a mediator present. The mediation will be recorded, in which will be sent to the Regional Office for review and kept on file for a period of two years.

f. Hazelton Federal Prison Complex, Administrative Remedy Request Program will be audit, by the Mid-Atlantic Regional Office every six-months, for a period of 10 years to determine if the inmates Administrative Remedy Request are being processed accordingly and to exercise their due process right guaranteed by the United States Constitution. and the Prison Litigation Reform Act.

g. Upon entering the Federal Bureau of Prisons each inmate will receive instruction on how to properly utilize the Administrative Remedy Request Program

h. Costs and interest and attorney's fees

i. The convening and empaneling of a jury to consider the merits of the claiming here in.

j. Such other and further reliefs as this court may deem appropriate and equitable.

Dated: Hazelton Federal Prison Complex
        April 14, 2020

**Attachment A**

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained in the complaint is true and accurate. Title 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at ____SFF-Hazelton____    on ____August 25, 2021____ .
            (Location)                        (Date)

_____
Your Signature