**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling**

**SHANDA LOVETTE GILYARD,**

                    Plaintiff**,**

          v.                                          **Civil Action No.: 5:21-CV-152**
                                                      Judge Bailey

**TAMMY SLINKA, L. SMITH,
P. ADAMS, ACTING WARDEN R.
McCAFFREY,** and **FEDERAL
BUREAU OF PRISONS,**

                    Defendants**.**

**<u>REPORT AND RECOMMENDATION</u>**

**<u>I. Background</u>**

Plaintiff initiated this action on August 30, 2021, by filing a Complaint under ***Bivens v.***

***Six Unknown Named Agents of Federal Bureau of Narcotics***, 403 U.S. 388 (1971).  On

September 22, 2021, the matter was stayed as plaintiff attempted to resolve the issues raised

in the Complaint.  The stay lasted until March 16, 2022, and on May 20, 2022, this Court

ordered defendants to file answers to the Complaint.  On September 15, 2022, defendants

filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. [Doc. 37].

Plaintiff filed a response in opposition to the Motion on October 31, 2022, [Doc. 46], and

defendants filed a reply on November 7, 2022.  The Motion is now fully briefed and ripe for

decision.  This matter is assigned to the Honorable John Preston Bailey, United States District

Judge, and it is referred to the undersigned United States Magistrate Judge for submission of

proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned recommends the case be dismissed.

## II. <u>The Complaint</u>

Plaintiff's Complaint raises five claims originating in a series of incidents involving plaintiff's cellmate while plaintiff was incarcerated at SFF Hazelton in Bruceton Mills, West Virginia.  As alleged in the Complaint, during March 2020, the cellmate expressed a desire to have sex with plaintiff to plaintiff and another prisoner and began spreading false rumors that she and plaintiff had had sex on three occasions.  Due in part to the cellmate's status as a sex offender and plaintiff's prior experiences of being sexually harassed, plaintiff became uncomfortable and reported the situation to defendants L. Smith and Slinka.  Defendant L. Smith is the Unit Manager of the building in which plaintiff was housed at the time, and defendant Slinka is a counselor at SFF Hazelton.  Plaintiff alleges that defendants refused to move plaintiff to a new cell.

On April 6, 2020, plaintiff emailed a Mental Health Specialist at the facility, Dr. Smith[1], of nightmares plaintiff was having caused by these incidents, as well as submitting administrative remedies complaining of defendants L. Smith and Slinka's refusal to investigate the matter.  The next day, plaintiff informed a Nurse Practitioner, Mrs. Bird, of the situation. On April 13 and 14, 2020, plaintiff sent additional correspondence to Dr. Smith referencing the actions of other inmates.  Plaintiff also submitted administrative remedies which stated:

> When subjecting a inmate to the possibility of predatory exploitatives, of sex offenders. It induces mental anguish, PTSD, mental regression and attempts of suicide.

---

[1] This is a separate individual from L. Smith, the defendant.

[Doc. 1 at 16].  Later that day, plaintiff was escorted to a cell and placed on suicide watch after defendant Slinka reported to Dr. Smith that plaintiff was suicidal.

The next day, plaintiff was called to Lieutenant Woody's office, where plaintiff spoke with Woody and Captain Squire, who talked with plaintiff about the situation and advised that plaintiff speak to the unit team.  According to plaintiff, two hours later, defendants L. Smith and Slinka, along with a third unnamed individual, informed plaintiff that as a result of "whoever you spoke with this morning" doing further investigation, plaintiff was being moved to a new cell.  [Doc. 1 at 19].  However, plaintiff's new cell was also with a new cellmate who is a sex offender.  Plaintiff contends that L. Smith and Gilyard intentionally placed plaintiff in a cell with another sex offender "to psychological[ly] torture" plaintiff.  [Id. at 20].  Plaintiff further alleges that L. Smith had moved plaintiff to a unit where plaintiff could not work as retaliation.  Further, on May 11, 2022, plaintiff alleges that defendant Slinka refused to provide plaintiff with a dinner tray.  The Complaint further alleges that on May 5, 2020, plaintiff lost 27 good conduct days as a result of an incident during a phone call with plaintiff's mother, who answered another call and relayed a message.  Plaintiff contends that this had been done before but that plaintiff had never received an incident report.

Based on all of the above, Count One of the Complaint asserts a claim of violating plaintiff's equal protection and due process rights through retaliation, taunting, and psychological torture.  Count Two asserts a claim against defendant Adams, the Warden of the facility at the time, alleging that he failed to remedy the wrongs caused by the above actions.  Count Three asserts a claim against the Federal Bureau of Prisons ("BOP"), alleging that the BOP had de facto policies in place which caused the above incidents to occur.  Count Four asserts that through the above actions, defendants violated plaintiff's right to equal

protection.  Count Five alleges abuse of process based on the same actions.  Finally, Count Six raises a claim of intentional infliction of emotional distress, citing the same actions.

### III. Standard of Review

"A responsive pleading captioned as a motion to dismiss or, in the alternative, as a motion for summary judgment puts all parties on notice that a court could construe the motion either way."  **Newsome v. Williams**, 2016 WL 11431790, at *2 (N.D. W.Va. May 26, 2016) (Trumble, MJ), *report and recommendation adopted* **Newsome v. Williams**, 2016 WL 4153615 (N.D. W.Va. Aug. 5, 2016) (Groh, CJ) (quoting **Laughlin v. Metro. Washington Airports Auth.**, 149 F.3d 253, 260 (4th Cir. 1998)).

### A. Motion to Dismiss - Fed.R.Civ.P. 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." **Republican Party of N.C. v. Martin**, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. **Mylan Labs, Inc. v. Matkari**, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also* **Martin**, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 555 (2007) (quoting **Conley v. Gibson**, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." ***Conley***, 355 U.S. at 45-46. In ***Twombly***, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." ***Conley***, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." ***Id***. (citations omitted), to one that is "plausible on its face," [***Id***. at 570], rather than merely "conceivable." ***Id***. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." ***Bass v. E.I. DuPont de Nemours & Co.***, 324 F.3d 761, 765 (4th Cir. 2003) (citing ***Dickson v. Microsoft Corp.***, 309 F.3d 193, 213 (4th Cir. 2002); ***Iodice v. United States***, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in ***Ashcroft v. Iqbal***, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." ***Ashcroft v. Iqbal***, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. ***Id***.

The Plaintiff is proceeding *pro se* and therefore the Court is required to liberally construe plaintiff's pleadings. ***Estelle v. Gamble***, 429 U.S. 97, 106 (1976); ***Haines v. Kerner***, 404 U.S. 519, 520–1 (1972) (per curiam); ***Erikson v. Pardus***, 551 U.S. 89, 94 (2007); ***Loe v. Armistead***, 582 F.2d 1291 (4th Cir. 1978); ***Gordon v. Leeke***, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, ***Haines***, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still

subject to dismissal. *Id*. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. ***Barnett v. Hargett***, 174 F.3d 1128 (10th Cir. 1999). However, a court may not construct the plaintiff's legal arguments for her. ***Small v. Endicott***, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." ***Beaudett v. City of Hampton***, 775 F.2d 1274 (4th Cir. 1985).

## B. <u>Motion for Summary Judgment</u>

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23 (1986).  The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986).

In ***Celotex***, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. ***Celotex***, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." ***Matsushita***, 475 U.S. at 586. The nonmoving party must present specific facts showing the existence of a genuine issue for trial.  *Id*. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or

6

denials of [the] pleading, but . . .  must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. *Id*. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita*, 475 U.S. at 587.

## IV. <u>Analysis</u>

In *Bivens*, 403 U.S. 388 (1971), the Supreme Court recognized that claimants may assert a cause of action for damages caused by federal agents.  In *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994), the Court held that federal agencies may not be held liable in a *Bivens* claim, writing, "*Bivens* from its inception has been based . . . on the deterrence of individual officers who commit unconstitutional acts." *Id*. *See Correctional Services Corp. v. Malesko*, 534 U.S. 61, 71 (2001).

Pursuant to *Bivens*, an individual federal agent may be found liable for actions "in excess of the authority delegated to him." 403 U.S. at 397.  "The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." *Malesko*, 534 U.S. at 70. The Supreme Court further explained in *Malesko*:

> If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP. With respect to the alleged constitutional deprivation, his only remedy lies against the individual.

534 U.S. at 72.  Further, in a *Bivens* case, the Plaintiff must specify the acts taken by each defendant which violate plaintiff's Constitutional rights.  *Wright v. Smith*, 21 F.3d 496, 501 (2nd Cir. 1994); *See Colburn v. Upper Darby Township*, 838 F.2d 663, 666 (3rd Cir. 1988)

("section 1983 claims[2] [have] the additional pleading requirement that the 'complaint contain a modicum of factual specificity identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs'").

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Id*.  "A *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others."  *Ziglar v. Abassi*, 137 S.Ct. 1843, 1860 (2017).

In *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994), the Fourth Circuit:

> set forth three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

(internal citations omitted).  The Court further explained that, "[t]o satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff."  *Id*. at 799 (citing *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)).

---

[2]  The Court notes that *Bivens* actions and § 1983 actions are both civil rights actions, and that *Bivens* actions regarding deprivation of civil rights are the federal counterpart to state actions authorized by 42 U.S.C. § 1983.

"A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses'"; however, a plaintiff claiming deliberate indifference "assumes a heavy burden of proof." *Shaw*, 13 F.3d at 799. "Causation is established when the plaintiff demonstrates an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff." *Id*.

## A. The BOP and defendant McCaffrey are not proper defendants in this case, and the parties agree both should be dismissed.

The undersigned finds that the BOP and defendant McCaffrey should be dismissed. The BOP is not a proper defendant in a *Bivens* case because, as noted above, federal agencies cannot be held liable under *Bivens*.  *See F.D.I.C. v. Meyer*, 510 U.S. at 472 (1994) ("The logic of *Bivens* itself does not support the extension of *Bivens* from federal *agents* to federal *agencies*.").  Defendant McCaffrey was named only in his capacity as acting Warden, and the Complaint states that "he was not the Warden when these acts of misconduct happened.  [Doc. 1 at 3].  As noted above, a *Bivens* defendant can only be held liable for his own acts, not the acts of others.  *Abbasi*, 137 S.Ct. at 1860 (2017).  In plaintiff's response to the Motion, plaintiff concedes that "[d]efendants Bureau of Prisons and McCaffrey should be dismissed."  [Doc. 46-1 at 10].  Accordingly, these defendants should be dismissed.

## B. The Complaint fails to state a claim against defendant Adams.

Similarly, defendant Adams, the warden of the facility during the period the alleged events occurred, should be dismissed because he is not liable under *Bivens* for the acts of his subordinates.  The Complaint does not allege any actions taken personally by Adams, but instead alleges that as a "supervisory defendant," he failed to remedy the wrongs committed by subordinates.  [Doc. 1 at 30].  Similarly, the Complaint uses the language of vicarious liability to allege that Adams was "responsible for the training, retention, supervision, discipline

9

and control of subordinate members" at Hazelton.  [Id. at 5].  "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  **Ashcroft v. Iqbal**, 556 U.S. 662, 676 (2009).  This is clearly the theory of liability the Complaint seeks to advance as to defendant Adams, and the claims against him should therefore be dismissed.

In response to the Motion to Dismiss, plaintiff argues that Adams is vicariously liable because he was aware of the alleged incidents through the Trulincs system and that through his inaction "increased Plaintiff vulnerability to the Constitutional injuries Plaintiff received." [Doc. 46-1].  Plaintiff states that "there was a direct causal link to the custom and the Constitutional injury." [Id.].  Plaintiff has not alleged that defendant Adams took any affirmative action, and the alleged failure to intervene falls far short of "deliberate indifference to or tacit authorization of the alleged offense practices."  Accordingly, the claims against defendant Adams should be dismissed for failure to state a claim.

**C. Plaintiff has failed to exhaust administrative remedies.**

Turning to the claims against defendants L. Smith and Slinka, the undersigned finds that the claims should be dismissed for failure to exhaust administrative remedies.  Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997e (a). "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."  **Porter v. Nussle**, 534 U.S. 516, 524 (2002).   Thus, exhaustion through administrative remedies is clearly mandated by § 1997(e)(a) prior to seeking relief through  suit  pursuant  to  **Bivens**.  **Booth  v.  Churner**, 532  U.S.  731,  741  (2001).  "[F]ederal prisoners suing under **Bivens v. Six Unknown Fed.**

***Narcotics Agents*** [ ], must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit." ***Porter v. Nussle***, 534 U.S. at 524 (internal citation omitted).   As recognized in ***Porter*** and ***Booth***, exhaustion is a prerequisite to suit, and accordingly, Plaintiff was required to exhaust all available administrative remedies prior to filing a ***Bivens*** complaint in federal court.

Moreover, in ***Woodford v. Ngo***, 548 U.S. 81, 93–94 (2006) (internal citations omitted), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) "to eliminate unwarranted federal-court interference with the administration of prisons"; (2) to "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits."

Here, plaintiff submitted remedies at the institutional and regional levels, but never appealed to the Central Office.  Plaintiff's regional level appeals were rejected because they did not include a copy of the rejected BP-9 remedy and the rejections instructed plaintiff to resubmit with the proper forms.  Plaintiff alleges that the BP-9 form was "purposely detached" from the BP-10 remedy, preventing exhaustion.  The undersigned finds that this conclusory allegation is unsupported by the record, and the remaining claims should be dismissed for failure to exhaust administrative remedies.

**D. Alternatively, plaintiff's claims are not cognizable under *Bivens*.**

Even if this Court were to excuse exhaustion of administrative remedies in this case, plaintiffs claims are not cognizable under ***Bivens***.  In ***Bivens***, the Supreme Court recognized that claimants may assert a cause of action for damages caused by federal agents.  In ***FDIC v. Meyer***, 510 U.S. 471, 484 - 86 (1994), the Court held that federal agencies may not be held

liable in a *Bivens* claim, writing, "*Bivens* from its inception has been based . . . on the deterrence of individual officers who commit unconstitutional acts." ***Id***. *See **Correctional Services Corp. v. Malesko***, 534 U.S. 61, 71 (2001).

Magistrate Judge Aloi summarized the Supreme Court's jurisprudence around ***Bivens***-type remedies following the 1971 decision:

> Over the next nine years, the Court allowed ***Bivens***-type remedies twice more, in a Fifth Amendment gender discrimination case, ***Davis v. Passerman***, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (an administrative assistant sued a Congressman for firing her because she was a woman), and in an Eighth Amendment cruel and unusual punishments clause case, ***Carlson v. Green***, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (a prisoner's estate sued federal jailers for failing to treat the prisoner's asthma).
>
> For nearly four decades, the Supreme Court has "consistently refused to extend Bivens to any new context or new category of defendants." ***Ziglar v. Abbasi***, 127 S.Ct. 1843, 1857 (2017). (citations omitted) (emphasis added). Moreover, in ***Abbasi***, the Supreme Court reiterated the significant limits to ***Bivens*** liability, cautioning courts to first consider whether to imply a remedy at all before reaching the merits of such claims. ―― U.S. ――――, 137 S.Ct. 1843, 198 L.Ed.2d 290 (2017). The court left no doubt that expanding the personal liability associated with ***Bivens*** is "a 'disfavored' judicial activity." ***Id***. at 1857 (citations omitted). The Court specifically noted that "in light of the changes" to its "general approach" to "implied damages remedies," the analysis in ***Bivens***, ***Davis***, and ***Carlson*** might be "different if they were decided today." ***Id***. at 1856.

*See also* ***Corr. Servs. Corp. v. Malesko***, 534 U.S. 61, 67 & n.3, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001) (noting that ***Bivens*** relied "largely on earlier decisions implying private damages actions into federal statutes" from which the Supreme Court has since "retreated.").

As this Court recently noted, ***Abbasi*** "marked a substantial shift in how courts are to interpret allegedly unconstitutional acts by federal actors when there is no statute permitting a damages remedy." ***Holloway v. Coakley, et al.***, Case No. 2:17-CV-74, Order Dismissing Case, ECF No. 73 (N.D.W.Va. Apr. 8, 2019). Specifically, ***Abbasi*** "narrowed the circumstances in which a plaintiff may successfully state a claim under principles established in ***Bivens***." ***Atkinson v. Holder***, No. 18-1677, 925 F.3d 606, 2019 WL 2147243, at *11 (4th Cir. Mar. 21, 2019) (citing ***Abbasi***, 137 S.Ct. at 1857-58).

After ***Abbasi***, there is now a two-step test when deciding whether a cognizable ***Bivens*** remedy exists for alleged official misconduct. First, a court must determine whether the claim presents a "new" ***Bivens*** context. Id. at 1859. If it does, the court must assess whether any "special factors counsel[ ] hesitation" in recognizing a new remedy "in the absence of affirmative action by Congress." ***Id***. at 1857, 1859. Therefore, if the ***Bivens*** claim meaningfully differs from "a claim against an FBI agent for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; [or] a claim against prison officials for failure to treat an inmate's asthma," it is a new context. ***Id***. at 1860.

13

In considering whether any special factors counsel hesitation in authorizing a damages remedy, this inquiry concentrates on "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1858. When asserting an implied cause of action under the Constitution, such as a *Bivens*, a separation-of-powers analysis is central to the inquiry. *See id*. at 1857. The question becomes who should decide whether to provide a damages remedy—Congress or the Court. *Id*. "The answer most often will be Congress [*id*.] ," because it "is not necessarily a judicial function to establish whole categories of cases in which federal officers must defend against personal liability claims." *Id*. at 1858. Moreover, the *Abbasi* decision instructs the lower courts that if claimants have alternative remedial structures, "that alone may limit the power of the Judiciary to infer a new *Bivens* 'cause of action.' In sum, if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy[,] ... the courts must refrain from creating the remedy in order to respect the role of Congress." *Id*.

*Arrick v. Fed. Bureau of Prisons*, No. 1:17CV131, 2019 WL 8301052, at *12–13 (N.D.W. Va. Dec. 10, 2019) (Aloi, M.J.), *report and recommendation adopted*, No. 1:17-CV-131, 2020 WL 1472243 (N.D. W.Va. Mar. 26, 2020) (Kleeh, J.), *aff'd*, No. 21-6589, 2021 WL 4860337 (4th Cir. Oct. 19, 2021), and *aff'd*, No. 21-6589, 2021 WL 4860337 (4th Cir. Oct. 19, 2021).

Turning to the two-step test set forth in *Abbasi*, the undersigned finds that plaintiff's claims would be new contexts.  While framed in different ways in each of the claims in the Complaint, the claims all relate back to the same underlying actions: that defendants initially

failed to move plaintiff to a new cell; that they intentionally moved plaintiff to a new cell with another sex offender and where plaintiff would be unable to work in order to retaliate against and psychologically torture plaintiff; that defendant Slinka refused to provide plaintiff with a dinner tray; and that plaintiff was unfairly penalized for the call in which plaintiff's mother relayed a message on another line.  It is clear that each of these would be new contexts.  "The Court has made clear that, for a case to be 'different in a meaningful way from [the three] previous Bivens cases,' a radical difference is not required."  *Tun-Cos v. Perrotte*, 922 F.3d 514, 523 (4th Cir. 2019) (citing *Abbasi*, 137 S.Ct. at 1859).

The finding of a new context requires the Court to assess whether any "special factors" counsel hesitation.  The undersigned finds that alternative remedies are available to plaintiff, which strongly cautions against the expansion of *Bivens* into a new context.  *Abbasi*, 137 S. Ct. at 1858 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action.").

Further, another factor counseling hesitation in expanding *Bivens* here is a separation-of-powers concern regarding Congress' involvement in prison litigation matters.   As summarized by the Eastern District of North Carolina,

> as separation-of-powers concerns, "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform .... Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987). In the context of new constitutional claims filed by federal prisoners challenging prison policies, the Judiciary is ill suited, "absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." [*Abbasi*], 137 S. Ct. at 1857-58.

*Mays v. Smith*, No. 5:18-CT-3186-FL, 2020 WL 5821841, at *13 (E.D.N.C. Sept. 30, 2020).  "Following the guidance in [*Abbasi*], the undersigned finds Congress is better suited to

determine whether to provide a damages remedy for Plaintiff's Eighth Amendment claim concerning conditions of confinement." *Fuquea v. Mosley*, No. CV 1:19-1392-HMH-SVH, 2020 WL 3848150, at *7 (D.S.C. Mar. 6, 2020), *report and recommendation adopted*, No. CV11901392HMHSVH, 2020 WL 1899493 (D.S.C. Apr. 16, 2020).

Based on the foregoing, the undersigned finds that no *Bivens* remedy exists for plaintiff's claim that the unsanitary conditions created by a broken toilet were ignored by defendant Kondrla, and the Court should dismiss this claim.

## V. <u>Recommendation</u>

For the reasons set forth above, Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [**Doc. 37**] should be **GRANTED** and this case should be **DISMISSED WITH PREJUDICE**.

The petitioner shall have **fourteen days** from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).**

This Report and Recommendation completes the referral from the district court.  The Clerk is **DIRECTED** to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is further **DIRECTED** to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to plaintiff's last known address as reflected on the docket sheet.

**DATED**: December 15, 2022.

*/s/ James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE

17